No. 2614.

WILLIE NICHOLS v. THE STATE.

MURDER—INTENT—DEADLY WEAPON—CHARGE OF THE COURT.—See the opinion and the statement of the case for the circumstances under which the trial court, on a trial for murder, should have charged the jury in conformity with article 612 of the Penal Code, which declares

that "the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless, from the manner in which it was used, such intention evidently appears."

APPEAL from the District Court of Tarrant. Tried below before the Hon. R. E. Beckham.

The conviction in this case was in the first degree for the murder of Lewis Schmidt, in the City of Fort Worth, Tarrant county, Texas, on the thirty-first day of March, 1887. The penalty assessed by the verdict was a life term in the penitentiary.

Frank Carter was the first witness for the State. He testified that he was a hack driver by occupation, and followed that business in the city of Fort Worth, Tarrant county, Texas. On the day alleged in the indictment, the defendant came to the witness's hack stand, in front of the Pickwick hotel, on Main street, in the said city of Fort Worth, and told witness that a man then on Sixteenth street had sent him for a hack, and that he, defendant, wanted witness to take the job. Witness consented, and defendant got up on the driver's seat with witness, and conducted him to the house on Sixteenth street, in which he said the man then was. Arrived at the house, the defendant got down, went into the house, and soon returned with a man named Schmidt. When Schmidt started to get into the hack defendant asked him for the twenty-five cents which he claimed Schmidt had promised him in payment for going for the hack. Schmidt threw the defendant some coin, which the defendant picked up and said was not enough, and that Schmidt "must go down for more." Schmidt said to defendant: "Go away, you black son of a b—h; that is all you will get," and, at the same time, kicked at defendant. The defendant seized a stone as Schmidt got into the hack, and was in the act of throwing it, when witness called to him not to do it, as he might break a glass in the hack door. Defendant did not then throw the stone, but said to Schmidt: "I will get even with you when you come back." The witness then asked Schmidt where he wanted to go. He directed witness to Wilderman's pawn shop, on Main street. Witness then drove from Sixteenth to Jones street, which was the first street east of Sixteenth street. The said Sixteenth street runs east and west, and Jones street runs north and south. He then drove one block north, up Jones street, to Fifteenth

street, which runs east and west. Witness then turned west on Fifteenth street, and drove about forty-five feet, when Schmidt rapped on the hack door and directed witness to stop. Witness stopped, and Schmidt got out near the back door of the Tre-mont saloon. The Tremont saloon fronts on Jones street. It had a rear door on Fifteenth street. It also had a door on Fifteenth street near the corner of the building. When Schmidt got out of the hack near the back door of the saloon, he asked witness to go into the saloon with him and get a drink. At that particular point of time the witness heard the sound of a blow, and, looking towards Schmidt, saw him in the act of falling. At almost the same instant the witness caught sight of the defendant, fifteen or twenty feet beyond Schmidt, running towards the opposite side of the street. The witness did not see the blow struck, nor did he know who struck it. He had not seen defendant since Schmidt got into the hack on Sixteenth street, until he saw him running across Fifteenth street after Schmidt fell. Schmidt was struck on the back of the head. The place where the blow was delivered, and where he fell, was six or eight blocks distant from where Schmidt got into the hack. Schmidt was struck and fell about twenty minutes after he got into the hack. He died on the next day. Witness did not see the defendant when Schmidt got out of the hack at the Tremont saloon, nor did he observe Schmidt at that particular time, and was unable to say whether or not Schmidt saw defendant, nor whether or not he started from the hack towards defendant.

W. L. Hilderbrand was the next witness for the State. He tes-tified that his occupation was that of a common carrier,—that is he drove a delivery or job wagon,—in the city of Fort Worth. On his way to the depot to meet a train, he traversed Fifteenth street. When he reached a point near the Tremont saloon, he observed the witness Frank Carter turning his hack towards the back door of that saloon. The then position of Carter's hack compelled the witness to stop his wagon. When witness got his wagon stopped he observed the man Schmidt south of Carter's hack, and going towards the back door of the Tremont saloon. About that time the defendant emerged from the alley in the rear of the Tremont saloon, and hurled a stone at Schmidt, which struck him on the back of the head, and felled him to the ground. Defendant was about twelve feet distant from Schmidt when he threw the stone, which was about the size of a man's hand. The

witness did not see the defendant pick up the stone, and did not know when nor where he got it. As soon as he threw the rock, the defendant fled. Schmidt died on the following day.

Doctor Cooper testified, for the State, in substance, that the cause of Schmidt's death was concussion of the brain, resulting from the blow with the stone. The State introduced two or three other witnesses who testified to no material fact.

By his mother, sister and step father, the defendant proved that, at the time of this trial, he had passed his sixteenth, but not yet attained his seventeenth year.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

White, Presiding Judge. A rock or stone about the size of a man's fist was the weapon with which appellant struck the deceased the blow which caused the death, and, whilst it is proven that the death ensued from the means used, it is not proven that the stone was necessarily a deadly weapon, and the fact that appellant intended to kill can only be deduced from antecedent circumstances and the result or effects of the blow he inflicted.

In brief, these antecedent facts are that defendant had threat-· ened to "get even" with Schmidt because he refused to pay the full amount defendant claimed to be due him. Defendant followed him several blocks, and, when an opportunity offered, he threw the stone, striking deceased on the back of the head, and at a time when deceased did not see or know of his whereabouts.

Under the facts developed, we are of opinion that the jury should have been instructed in conformity with the provisions of article 612 Penal Code, which declares that "the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death it is not to be presumed death was designed, unless from the manner in which it was used such intention evidently appears." It was the *intent* which was the essential point in the case, and the jury, in arriving at it, should have been instructed fully in the provisions of the law which furnished the criterion by which it should be ascertained.

We have carefully inspected the charge of the court, and it

fails to present the law as it is written above in the plain and unambiguous language of the statute.   In its application to the facts, the charge appears in part confused, and lacks the perspecuity and comprehensiveness characteristic of the learned trial judge.

For error of omission in the charge, as above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*